902 P.2d 563 (1995)
120 N.M. 408
In re FORFEITURE OF FOURTEEN THOUSAND SIX HUNDRED THIRTY NINE DOLLARS ($14,639) IN UNITED STATES CURRENCY IN VARIOUS DENOMINATIONS AND TWO (2) DIGITAL PAGERS.
ALBUQUERQUE POLICE DEPARTMENT, Petitioner-Appellant,
v.
Toby Orlando MARTINEZ, Respondent-Appellee.
No. 15525.
Court of Appeals of New Mexico.
July 13, 1995.
Certiorari Denied August 24, 1995.
*564 Sharon D. Walton, Albuquerque, for petitioner-appellant.
Todd Hotchkiss, Timothy M. Padilla & Associates, P.C., Armand T. Carian, Albuquerque, for respondent-appellee.

OPINION
FLORES, Judge.
The Albuquerque Police Department (the Department) appeals from the trial court's order and judgment setting aside a default judgment in favor of the Department, ordering the return of certain seized property to Respondent (Martinez), and in essence dismissing the forfeiture case. The Department raises several issues on appeal, contending that the trial court erred (1) by dismissing the forfeiture petition (a) when there was no motion to dismiss before the court; (b) without requiring Martinez to answer; and (c) without allowing legal briefing on the issues; (2) by applying the exclusionary rule to the civil forfeiture case; and (3) by applying the order from the criminal proceeding to the civil forfeiture case. We affirm the trial court on these issues but grant the Department's request to remand for a determination of the existence of residual evidence to support the forfeiture action.

I. FACTUAL AND PROCEDURAL BACKGROUND

On January 22, 1993, two of the Department's police officers were dispatched to an accident within the City of Albuquerque. Upon their arrival at the scene, the officers observed a vehicle which had struck a tree. Martinez was the driver of the vehicle. The vehicle could not be driven after the accident; therefore, the Department's personnel sought to inventory the vehicle prior to having the vehicle towed. In the process of *565 conducting the inventory, a police service aide saw a blue, bulky duffle bag on the passenger seat of the vehicle. He opened the duffle bag and observed a clear zip-lock bag containing several smaller zip-lock bags with a white powdery substance and a box of syringes. When the bag was later searched, the officers found eight individually packaged ounces of cocaine and $14,000 packaged in bundles of one thousand dollars. While at the scene, officers also saw Martinez drop several items, among which were a piece of plastic containing a black substance which later field-tested positive for opiate (heroin) and a clear plastic zip-lock bag containing a white powdery substance which field-tested positive for cocaine. Martinez was placed under arrest on a felony drug charge. He was then searched incidental to the arrest and four syringes full of brown liquid, a paper bindle containing a white powder residue, two digital pagers, and $639 were found on his person. In addition, Martinez, after receiving his Miranda warnings (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), admitted that he had recently bought some cocaine and that he usually bought cocaine for the purpose of selling it.
On February 10, 1993, eighteen days after the accident and arrest of Martinez, the Department filed a petition for forfeiture of the $14,639 and the two digital pagers earlier seized by the Department. Martinez was not personally served with the petition for forfeiture, but instead was served by publication. Martinez failed to file a responsive pleading to the petition for forfeiture, and after more than thirty days had passed from publication, the trial court entered a default judgment against Martinez, forfeiting the money and the two digital pagers to the Department.
On November 10, 1993, Martinez filed a motion to set aside the default judgment and for return of the seized property. In support of his motion, Martinez alleged that the default judgment should be set aside because he had never been properly served with the petition for forfeiture and that the property seized should be returned to him because of an order entered by District Court Judge Dal Santo in a related criminal proceeding, releasing all evidence seized, except contraband, unless such evidence had been legally forfeited. In this regard, we note that as a result of this incident, Martinez was also indicted on various felony counts. In the criminal case, Martinez filed a motion to suppress the evidence seized by the Department. On August 26, 1993, Judge Dal Santo held a hearing on Martinez's motion. At the hearing, and throughout the criminal proceedings, the State was represented by the district attorney's office. On September 21, 1993, Judge Dal Santo entered an order granting Martinez's motion. The judge ruled that the search of the closed duffle bag found inside the vehicle as part of a warrantless search was unreasonable and in violation of state and federal constitutional requirements and suppressed the evidence seized. (This order was not appealed, and we express no view on the merits.) As a result of this order, the district attorney's office, on September 28, 1993, filed a nolle prosequi in the criminal case. Thereafter, on October 25, 1993, pursuant to Martinez's motion, Judge Dal Santo entered an order releasing to Martinez "all evidence, except contraband, unless said evidence has been forfeited by a District Court Judgement."
Meanwhile, in the forfeiture case, the Department, on November 23, 1993, filed a response to Martinez's motion to set aside the default judgment and for return of property. On January 10, 1994, the trial court held a hearing on the motion. The trial court, after reviewing the pleadings and considering the arguments of counsel as well as taking judicial notice of the related criminal proceedings, entered an order and judgment setting aside the default judgment and, in essence, dismissing the forfeiture petition, concluding that it was bound by Judge Dal Santo's order in the criminal case releasing the seized property. The Department appeals from the order and judgment setting aside the default judgment and dismissing the forfeiture case.

II. DISCUSSION

A. Dismissal of Forfeiture Petition

The Department argues that the trial court erred by dismissing the petition for *566 forfeiture when there was no motion to dismiss before the court. We do not agree.
As previously stated, the trial court dismissed the forfeiture petition based on Judge Dal Santo's order in the criminal case. Judge Dal Santo's order specifically provided that all evidence, except contraband, be released, "unless said evidence has been forfeited by a District Court Judgement." It appears that Judge Dal Santo, in ordering the release of the property, did so pursuant to SCRA 1986, 5-212(D) (Repl.1992). However, Judge Dal Santo did not enter the order releasing the property until five months after default judgment in the forfeiture proceeding. Therefore, the Department asserts that at the time of Judge Dal Santo's order, the property had already been forfeited by the prior entry of default judgment in favor of the Department. As such, the money and the digital pagers could not be released to Martinez because they were being held by the Department as property which was subject to forfeiture or had been forfeited. Consequently, the Department contends that once the trial court set aside the default judgment, the petition for forfeiture remained pending subject to an answer being filed by Martinez, and the property, at that time, was deemed to be in the lawful custody of the Department.
We agree with the Department that, insofar as the trial court did nothing more than grant the motion to set aside the default judgment, the forfeiture action was still pending. Yet Martinez in his motion to set aside the default judgment also moved for the return of the property and asked the court to enforce Judge Dal Santo's order. Thus, Martinez was essentially seeking dismissal of the petition for forfeiture. Martinez's motion and brief adequately placed the Department and the trial court on notice of the arguments that he would raise at the hearing. The motion is entitled "Motion to Set Aside Default Judgment ... and Motion for Return of Property." The motion requested that "the forfeited property be returned to Defendant pursuant to Judge Dal Santo's order." Furthermore, his memorandum in support of the motion relies on In re One 1967 Peterbilt Tractor, 84 N.M. 652, 506 P.2d 1199 (1973), and asserts that Judge Dal Santo's order operates as collateral estoppel in the forfeiture proceeding. By (1) concluding that the Department was collaterally estopped from relitigating the unconstitutionality of the search, (2) excluding the evidence that resulted from the search, and (3) releasing the property to Martinez, the trial court simply granted the relief sought by the motion. Therefore, we conclude that Martinez's motion, although not explicitly stated as such, constituted a motion to dismiss. To rule otherwise would defeat the goals of judicial economy since remanding for technically proper procedures would lead to the same result. See Gracia v. Bittner, 120 N.M. 191, 197-98, 900 P.2d 351, 357-58 (1995).
The Department next argues that the trial court erred by dismissing the forfeiture petition without requiring Martinez to answer the petition. The fact that Martinez failed to answer the petition is not fatal to the trial court's decision to dismiss the petition for forfeiture. Admittedly, the Rules of Civil Procedure apply to forfeiture proceedings under the Controlled Substances Act. NMSA 1978, § 30-31-35(C) (Repl.Pamp.1989). Although the Rules of Civil Procedure require a complaint and an answer to be filed, SCRA 1986, 1-007(A) (Repl.1992), a motion to dismiss for failure to state a claim, SCRA 1986, 1-012(B)(6) (Repl.1992), can be filed in lieu of an answer. Since we have determined that Martinez's motion substantively constituted a motion to dismiss, an answer was not required. Moreover, the fact that the trial court relied on matters outside of the pleadings is of no material significance because in such circumstances a motion to dismiss can be treated as one for summary judgment. SCRA 1-012(B), (C); see Peck v. Title USA Ins. Corp., 108 N.M. 30, 32, 766 P.2d 290, 292 (1988) (affirming treatment of a motion to dismiss as a motion for summary judgment where matters outside of the pleadings were presented, although defendant had not filed an answer to the amended pleading).
With regard to the Department's argument that the trial court erred by not allowing legal briefing on the issues, we find no error. First, the Department had sufficient *567 opportunity to file a brief. Second, following the presentment hearing to determine the form of the order, the trial court gave the Department an additional day to file a brief before entering a judgment and order. The Department thereafter filed a timely memorandum brief.
The Department further argues that because Martinez never filed an answer alleging an interest in the seized property, he has failed to demonstrate standing to contest the forfeiture. However, it appears that the Department raised the standing issue for the first time in its memorandum brief filed after the presentment hearing. At the motion hearing Martinez's attorney said: "I don't believe that is an issue as to whether or not he's the owner of the property or lawfully entitled to its possession. There's no indication to the contrary." When the Department's attorney later at the hearing listed the issues remaining to be resolved, she made no mention of Martinez's standing or ownership interest. Therefore, the Department failed to preserve the standing issue for our review. See Woolwine v. Furr's, Inc., 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court.").

B. Exclusionary Rule

We first address whether the exclusionary rule should apply to the forfeiture proceeding in this case. We hold that it does.
The Fourth Amendment of the United States Constitution, which is made applicable to the states through the Fourteenth Amendment, protects citizens against unlawful searches and seizures. State v. Garcia, 76 N.M. 171, 174, 413 P.2d 210, 212 (1966). Under what is termed the "exclusionary rule," evidence that is unconstitutionally obtained is inadmissible at trial. The primary purpose of the exclusionary rule is to "deter future unlawful police conduct." State v. Ramirez, 89 N.M. 635, 639, 556 P.2d 43, 47 (Ct.App.1976) (quoting United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974)), overruled on other grounds by Sells v. State, 98 N.M. 786, 788, 653 P.2d 162, 164 (1982).
We find Peterbilt to be determinative on the issue of whether the exclusionary rule applies to civil forfeiture proceedings in New Mexico. The Department contends that because both parties in Peterbilt conceded the applicability of the exclusionary rule, the Court never reached the issue. While it is true that the State conceded the issue, our Supreme Court adopted that concession and cited to One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), the United States Supreme Court case that stands for the proposition that the Fourth Amendment exclusionary rule is applicable in a forfeiture proceeding. Peterbilt, 84 N.M. at 654, 506 P.2d at 1201. Peterbilt also stands for that proposition. To the extent that the Department argues that Peterbilt assumed but did not decide the issue, we disagree and hold otherwise.
The Department's argument that New Mexico law has changed since Peterbilt is also without merit. In order to justify the application of the Fourth Amendment exclusionary rule to forfeiture proceedings, courts have characterized them as quasi-criminal. The Department maintains that after Peterbilt, both the legislature's decision to apply the Rules of Civil Procedure to forfeiture proceedings under the Controlled Substances Act and the holding in In re Forfeiture of One 1980 Honda Accord, 108 N.M. 274 at 275, 771 P.2d 982 at 983, to the effect that forfeiture proceedings are purely in rem proceedings, confirms the civil nature of the proceedings. Yet, after Peterbilt, forfeiture under the Controlled Substances Act has been characterized as "`quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against law.'" State v. Ozarek, 91 N.M. 275, 276, 573 P.2d 209, 210 (1978) (quoting One 1958 Plymouth Sedan, 380 U.S. at 700, 85 S.Ct. at 1250).
We determine that the legislature's choice to tie forfeiture directly to the commission of drug offenses under the Controlled Substances *568 Act confirms the punitive nature of these provisions. Additionally, the "innocent owner" exceptions to NMSA 1978, Section 30-31-34(D) (Repl.Pamp.1989), whereby the forfeiture of aircraft, vehicles, or vessels used for the transportation of controlled substances or related raw materials, products and equipment is prohibited if such use was without the owner's knowledge or consent, demonstrates the legislature's intent to punish only those persons involved in drug trafficking. See § 30-31-34(G)(1)-(4); see e.g., Austin v. United States, ___ U.S. ___, ___, 113 S.Ct. 2801, 2811, 125 L.Ed.2d 488 (1993) ("innocent owner" exemptions from forfeitures under the Comprehensive Drug Abuse Prevention and Control Act reveals congressional intent to punish only those involved in drug trafficking).
This interpretation is further supported by the comments to the Uniform Controlled Substances Act (the UCSA) Section 505, 9 U.L.A. 835 (1988). Because "[t]he New Mexico forfeiture statute was modeled after Section 505 of the UCSA[,]" Section 30-31-34 is worded almost identically to Section 505(a) of the UCSA. State ex rel. Dep't of Pub. Safety v. One 1990 Chevrolet Pickup, 115 N.M. 644, 648, 857 P.2d 44, 48 (Ct.App.), cert. denied, 115 N.M. 602, 856 P.2d 250 (1993). The comment following Section 505 states:
Effective law enforcement demands that there be a means of confiscating the vehicles and instrumentalities used by drug traffickers in committing violations under this Act. The reasoning is to prevent their use in the commission of subsequent offenses involving transportation or concealment of controlled substances and to deprive the drug trafficker of needed mobility.
9 U.L.A. at 835; see also One 1990 Chevrolet Pickup, 115 N.M. at 649, 857 P.2d at 49 (holding that "Section 30-31-34(D) permits forfeiture only when the controlled substances in question are possessed for the purpose of sale.").
The United States Supreme Court has also recognized the punitive nature of forfeiture proceedings, although it adopted a civil burden of proof, and has afforded some of the same protections traditionally associated with criminal trials to civil forfeiture proceedings. See Austin, ___ U.S. ___, 113 S.Ct. 2801, 125 L.Ed.2d 488 (applying Eighth Amendment excessive fines protection to civil forfeiture actions); United States v. United States Coin & Currency, 401 U.S. 715, 718, 91 S.Ct. 1041, 1043, 28 L.Ed.2d 434 (1971) (applying Fifth Amendment self-incrimination clause to civil forfeiture proceedings); One 1958 Plymouth Sedan, 380 U.S. at 696, 85 S.Ct. at 1248 (holding Fourth Amendment exclusionary rule applicable to forfeiture actions). Moreover, other jurisdictions have also recognized that although civil in form, forfeiture proceedings are quasi-criminal so that the exclusionary rule applies. See Berryhill v. State, 372 So.2d 355, 356 (Ala.Civ.App.1979); In re One 1987 Toyota, 621 A.2d 796, 799 (Del.Super.Ct.1992); In re Forfeiture of Approximately Forty-Eight Thousand Nine Hundred Dollars ($48,900.00) in U.S. Currency, 432 So.2d 1382, 1385 (Fla.Dist.Ct.App.1983); Sims v. Collection Div. of Utah State Tax Comm'n, 841 P.2d 6, 14 (Utah 1992); McDaniel v. City of Seattle, 828 P.2d 81, 83 (Wash.Ct.App.1992), review denied, 844 P.2d 1017 (1993); cf. People v. Braden, 243 Ill.App.3d 671, 183 Ill.Dec. 312, 316, 611 N.E.2d 575, 579 (Ill.App.Ct.1993).
Further, our determination that the Fourth Amendment exclusionary rule is applicable to forfeiture proceedings is supported by the UCSA and the cases interpreting that Act. Other jurisdictions that have adopted statutes similar to the UCSA have expressly or impliedly held that the Fourth Amendment exclusionary rule applies to forfeiture proceedings under the UCSA or a similar statute. See Ana Kellia Ramares, Annotation, Forfeitability of Property, Under Uniform Controlled Substances Act or Similar Statute, Where Property or Evidence Supporting Forfeiture was Illegally Seized, 1 A.L.R.5th 346 (1992 & Supp.1994); see also Caudill v. State, 613 N.E.2d 433, 439 (Ind.Ct.App.1993) (agreeing that the exclusionary rule applies to civil forfeiture proceedings).

C. Collateral Estoppel

We next address the issue of whether the trial court erred by applying the doctrine of collateral estoppel. The Department argues that collateral estoppel does not apply to *569 these proceedings because the parties in the criminal proceeding were not the same parties as those in the forfeiture proceeding. We disagree with the Department's position that collateral estoppel does not apply in this case.
The purpose of the doctrine of collateral estoppel is to foster judicial economy by precluding the "`relitigation of ultimate facts or issues actually and necessarily decided in a prior suit.'" State v. Bishop, 113 N.M. 732, 734, 832 P.2d 793, 795 (Ct.App.) (quoting Silva v. State, 106 N.M. 472, 474, 745 P.2d 380, 382 (1987)), cert. denied, 113 N.M. 690, 831 P.2d 989 (1992). In order for collateral estoppel to apply, the following elements must be met: "(1) the parties are the same or in privity with the parties in the original action; (2) the subject matter or cause of action in the two suits are different; (3) the ultimate facts or issues were actually litigated; and (4) the issue was necessarily determined." Reeves v. Wimberly, 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct.App.1988). Once the trial court determines that the elements have been met, it must then decide "whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation." Shovelin v. Central N.M. Elec. Coop., Inc., 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993).
The threshold question presented by this appeal, which is one of first impression in New Mexico, is whether under the doctrine of collateral estoppel, issues resolved in a criminal trial prosecuted by the State should be given preclusive effect in a civil forfeiture proceeding initiated by the Department.
We are not persuaded by the cases cited by the Department in support of its argument. The issue here is not whether an acquittal in a criminal case bars a subsequent forfeiture action or whether a state proceeding bars a federal one. See United States v. One Assortment of 89 Firearms, 465 U.S. 354, 361, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984) (neither collateral estoppel nor double jeopardy bars a civil remedial forfeiture proceeding following an acquittal on related criminal charges); United States v. One (1) 1984 Mercedes Benz, 673 F.Supp. 387, 391 (D.Haw.1987) (state court ruling suppressing evidence does not bar the United States from litigating the same issue in a civil forfeiture). Instead, we are more persuaded by the cases cited by Martinez, Richardson v. Four Thousand Five Hundred Forty-Three Dollars, United States Currency, 120 Idaho 220, 814 P.2d 952 (1991) and Briggs v. State, Department of Public Safety, 732 P.2d 1078 (Alaska 1987). Richardson held that a decision on a motion to suppress in a criminal proceeding has collateral estoppel effect on a subsequent forfeiture proceeding. Richardson, 814 P.2d at 955 (citing United States v. United States Currency in the Amount of $228,536.00, 895 F.2d 908 (2d Cir.), cert. denied, 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990); Franklin v. Klundt, 50 Wash.App. 10, 746 P.2d 1228 (1987); State v. Eleven Thousand Three Hundred Forty-Six Dollars & No Cents in United States Currency, 777 P.2d 65 (Wyo.1989)). We also find instructive the discussion in Briggs regarding privity between the state and the department of public safety:
As previously noted, the third requirement for application of collateral estoppel is that of privity. Under the circumstances presented here, we hold that the Department of Public Safety and the state were in privity. "The general rule is that litigation by one agency is binding on other agencies of the same government, but exceptions may be warranted if there are important differences in the authority of the respective agencies." 18 C. Wright, A. Miller, and H. Cooper, Federal Practice and Procedure § 4458, at 504-05 (1981). The test for determining whether the government is collaterally estopped in subsequent litigation has been stated as "whether or not in the earlier litigation the representative of the [government] had authority to represent its interests in a final adjudication of the issue in controversy." Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 403, 60 S.Ct. 907, 917, 84 L.Ed. 1263, 1276 (1940) (emphasis added).
Briggs, 732 P.2d at 1082.
Thus, we have no hesitation in giving collateral estoppel effect in a forfeiture proceeding to a prior decision on a motion to suppress *570 in a criminal proceeding. The more difficult issue presented in this case is whether collateral estoppel should apply when the criminal prosecution was in the name of the State, whereas the forfeiture proceeding was initiated by the Department. It appears that at least two out-of-state cases have addressed this issue and determined that the state and a municipality are in privity for the purposes of collateral estoppel. We find one of those cases especially persuasive.
Although not particularly instructive on the issue of privity, the court in State v. Kolde, 18 Kan.App.2d 525, 855 P.2d 498 (1993), review denied (July 29, 1993), held that even though the City of Wamego and the State of Kansas are not precisely the same party, they are nevertheless in privity because both are "arms" of the government. Id. at 500. More instructive on the issue of privity is Irizarry v. City of New York, 79 Misc.2d 346, 357 N.Y.S.2d 756 (1974), wherein Irizarry brought suit against the City of New York for malicious prosecution. Irizarry argued that the City of New York was collaterally estopped from relitigating an issue resolved in his criminal trial, namely, the invalidity of the search warrant and the illegality of the evidence obtained on the basis of such warrant. Id. at 757. The court held that "there is a clear identity of interest between the defendant City of New York in the civil case and the People of the State of New York in whose name the criminal prosecution had been instituted." Id. at 759. The court stated that
the City has no capacity to institute criminal prosecution in its own name even though its enforcement officers, namely, the City police, bring about the institution of criminal proceedings in enforcement of State penal laws. While the technical prosecutor in a criminal proceeding is "The People of the State of New York" its interest is identical with that of the City of New York in enforcing the criminal laws within the City of New York.
Id.
The court further reasoned that "[t]he City had knowledge and control of the facts supporting the basic issues involved in the criminal proceeding," since it was the city's police officers who provided the testimony which formed the basis for the prosecution. Id. Therefore, the court determined that there was "no valid public interest to be served by permitting the City to relitigate in this civil case those very issues which have been decided adversely to it in the criminal proceeding initiated by its own agents." Id. at 760.
Similarly, in this case, the State and the Department have like interests in imposing punitive sanctions for violation of the State's criminal laws. Given this commonality of interests, the two should be treated as the same entity for collateral estoppel purposes. Supporting this view is the decision of the United States Supreme Court in Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), which held that successive prosecutions by a state and a municipality for the same offense would violate the prohibition against double jeopardy. See State v. Manzanares, 100 N.M. 621, 623, 674 P.2d 511, 513 (1983) (for purposes of criminal prosecution "cities are considered a part of the state, not a separate entity"), cert. denied, 471 U.S. 1057, 105 S.Ct. 2123, 85 L.Ed.2d 487 (1985).
Thus, we conclude that in the circumstances presented by this case the State and the Department should be treated as in privity for the purposes of collateral estoppel. Cf. Davis v. Eide, 439 F.2d 1077 (9th Cir.) (findings in state criminal case do not have collateral estoppel effect against police officers sued in federal court for violation of civil rights), cert. denied, 404 U.S. 843, 92 S.Ct. 139, 30 L.Ed.2d 78 (1971). "However, even if the elements of collateral estoppel are otherwise met, the district court may still determine that the application of collateral estoppel would be fundamentally unfair and would not further the aim of the doctrine, which is to prevent endless relitigation of issues." Bishop, 113 N.M. at 734, 832 P.2d at 795. The Department, however, has not alleged any unfairness, such as some inadequacy in the suppression hearing before the district court.

D. Need For Remand

Although we hold that the trial court properly applied collateral estoppel principles *571 to preclude admission in the forfeiture proceedings of evidence that the district court had previously held to have been unconstitutionally seized, we cannot fully affirm the decision of the trial court. The Department may have other evidence that could sustain the forfeiture. Therefore, we remand to the trial court for a determination of whether residual evidence exists on which the Department can rely to support the petition for forfeiture. See United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1064-65 (9th Cir.1994) (evidence obtained independent of illegal seizure may be used to support forfeiture).

III. CONCLUSION

For the reasons stated, we affirm the trial court on the issues raised on appeal, but remand for further proceedings consistent with this opinion.
IT IS SO ORDERED.
HARTZ and PICKARD, JJ., concur.